142 So.2d 362 (1962)
Fanny BERLIN and Irving Berlin, Her Husband, Appellants,
v.
SOUTHGATE CORP., a Florida Corporation, d/b/a Southgate Apartments, and Louis Gerger and Morris Orlin d/b/a L & G Glass & Mirror Works, Appellees.
No. 61-452.
District Court of Appeal of Florida. Third District.
June 19, 1962.
*363 Kastenbaum, Mamber, Gopman & Epstein, Miami Beach, for appellants.
Blackwell, Walker & Gray and John Rodgers Camp, Jr., and Sherouse & Corlett and William Merritt, Miami, for appellees.
Before HORTON and HENDRY, JJ., and MEADOWS, WILLIAM A., Associate Judge.
MEADOWS, WILLIAM A., Associate Judge.
This is an appeal by the plaintiffs from an adverse summary judgment. The complaint alleged, inter alia, that plaintiff Fanny Berlin was injured when she tripped and fell over an aluminum bar installed on the eleventh floor of the Southgate Apartments. It further alleged that the appellees had negligently failed to post any warnings or take any precautionary measures to advise persons using the hallway of the presence of the bar.
The plaintiff's deposition and three affidavits submitted in support of and against the motions for summary judgment reveal the following facts upon which the trial court based its decision. For some considerable period of time, the plaintiff Fanny Berlin had visited a friend, Mrs. Hannah Bernstein, in the latter's apartment on the eleventh floor of the Southgate Apartments once a week to play canasta. On each of the many occasions Mrs. Berlin would take the elevator to the eleventh floor, take three of four steps to the right, and turn to the right again to go to Mrs. Bernstein's apartment.
On April 4, 1960, the appellee L & G Glass & Mirror Works, under its contract with the appellee Southgate Corp., began installing a glass panel and door at the point of the alleged accident. At the end of the day, an aluminum strip, 1 3/4 inches high, had been placed along the floor, and the workmen left without leaving warning of any kind of its presence to those walking along the hallway.
At about 7:30 p.m. of the same day, Fanny Berlin went, as was her custom, to play canasta with Mrs. Bernstein. Her testimony as to what occurred is as follows:
"Q You took an elevator to the eleventh floor?
"A Yes.
"Q. How far was this piece of aluminum that you tripped over from the elevator door?
"A It was close by. I came out the end elevator. There are three elevators and I came out the end one and it was just a short distance.
"Q Approximately the distance in feet, if you know? Give me your best estimation, ma'am.
"A Maybe three, two. Well, I would say about three feet.
"Q Was this aluminum in a frame?
"A It was just a metal stripping that was across the floor.
"Q Was there any aluminum stripping up the sides, across the top, ma'am? In other words, was it an aluminum frame without the glass?
"A That is right.
"Q That was installed?
"A That is right.
"Q That was at the end of the hallway as you step off the elevator and you make a right turn?
"A Yes, to get to the apartment.
"Q Could you see where you were going as you came off the elevator?
"A Yes, naturally. I mean, I just got off the elevator and turned right as I always do.

*364 "Q Were you first or second?
"A I was first and Mrs. Fierman was behind me.
"Q Did you see this aluminum frame before you tripped over it?
"A No, of course not. Had I seen it I wouldn't have tripped. I would have known it was there. I just got off the elevator and looked up and just walked through as I always do.
"Q You did not open a frame door?
"A No. There was no door there. There was nothing there.
"Q As I understand your testimony, you did not see any framework at all?
"A The frame might have been there, but I never saw it.
"Q I assume you looked after you fell?
"A Naturally.
"Q You saw some aluminum stripping on the floor?
"A Yes."
Shortly before the plaintiff fell, Mrs. Gene Gill departed the elevator on the eleventh floor, took a few steps to her right, and tripped over the same aluminum bar the plaintiff tripped over. In explaining her fall, Mrs. Gill said:
"* * * she looked to see over what she had tripped, and saw that an aluminum bar had been attached to the floor which had obviously been placed there by repairmen; that being unaware that any construction was taking place on that floor, and not having reason to expect such an obstruction, she did not notice same; that upon stepping off the elevator and turning right, her eyes, as was always the case, were immediately caught by the vast and beautiful view available from the eleventh floor of the Southgate Towers Apartments."
There is dispute over whether this strip would have been obvious to anyone using this hallway. Elzie Horne, in an affidavit in support of defendants' motion for summary judgment, states:
"5. That said aluminum framework is constructed of unpainted aluminum and is 1 3/4 inches in width. The color of this aluminum frame does not blend with the floor coloring and would be obvious to anyone who may have been using the hallways in said apartment building.
"6. At the end of each hallway and alongside the aforesaid aluminum framework, there exists a doorway through which persons using said hallways could pass, thus making it unnecessary for anyone to step over any aluminum framework which may have been installed prior to the installation of any glass paneling."
Mrs. Gene Gill, in her affidavit in opposition to the motion, states:
"8. (a) The aluminum bar over which Deponent and Mrs. Fannie Berlin both tripped was not obvious to users of the hallway, who had no reason to expect such an obstruction, nor did said bar stand out against the floor as the flooring at that time was raw concrete.
"(b) That on the evening of April 4, 1960, construction of this glass paneling had progressed only to the extent that a single bar had been placed along the floor of the hallway and that no bars as yet had been installed along the sides or walls
"(c) That the doorway mentioned by the aforesaid Affiants in their Affidavits did not exist prior to April 4, 1960, and was not created until the installation of this glass paneling had progressed almost to its completion."
Appellants contend the trial court erred since there are present genuine issues of *365 material fact which preclude disposition of this case by summary adjudication. We find this contention has merit.
The record does not indicate whether the granting of summary judgment was grounded upon appellants' failure to show actionable negligence or upon a finding that Fanny Berlin was guilty of contributory negligence as a matter of law.
Considering first the issue of negligence, along with the principle that all reasonable inferences from the evidence be resolved in the plaintiffs' favor,[1] failure of the appellees to give any warning of the installation of aluminum framing in such close proximity to the elevator is sufficient to raise material issues of fact as to whether or not they were guilty of negligence.
Turning to the issue of contributory negligence, we do not believe that the evidence establishes plaintiff's guilt as a matter of law. She was charged with the duty to exercise a reasonable degree of care for her own safety and to see that which would be obvious upon the ordinary use of her senses, but it is not contributory negligence to fail to look out for danger when there is no reason to apprehend any.[2] The plaintiff had used this hallway on many occasions without experiencing any difficulty and, in view of the fact no warning was given, had no reason to apprehend any danger on the night in question. Further, as pointed out above, there is a dispute over whether the strip would have been obvious to her had she been looking in that direction.[3]
Since there are present in this case genuine issues of material fact as to the questions of negligence, contributory negligence and visibility of the obstruction, the trial court erred in granting the summary judgment.[4]
Accordingly, the summary judgment appealed is reversed and the cause is remanded for further proceedings not inconsistent herewith.
Reversed and remanded.
NOTES
[1] Warring v. Winn Dixie Stores, Fla.App. 1958, 105 So.2d 915.
[2] Chambers v. Southern Wholesale, Fla. 1956, 92 So.2d 188.
[3] Even if the record warranted the conclusion that the strip would have been visible to plaintiff had she been looking in that direction, this fact alone would not settle the question of contributory negligence. See Quinn v. I.C. Helmly Furniture Company, Inc., Fla.App. 1962, 141 So.2d 302; Hanson v. Shell's City, Inc., Fla. App. 1961, 133 So.2d 573; Purdon v. Cohen, Fla.App. 1961, 126 So.2d 575; Warring v. Winn Dixie Stores, Inc., supra; Shell's Super Store, Inc. v. Parker, Fla. App. 1958, 103 So.2d 884; City of Jacksonville v. Stokes, Fla. 1954, 74 So.2d 278.
[4] Rule 1.36(c), Florida Rules of Civil Procedure, 30 F.S.A. See also Holmes v. Forty-five Twenty-five, Inc., Fla.App. 1961, 133 So.2d 651; Buck v. Hardy, Fla. App. 1958, 106 So.2d 428, and numerous cases cited therein.